B. Foster Wimberly and Marion Wimberly v. Commissioner.
Wimberly v. Commissioner
Docket No. 82147.
United States Tax Court
T.C. Memo 1963-208; 1963 Tax Ct. Memo LEXIS 137; 22 T.C.M. (CCH) 1039; T.C.M. (RIA) 63208; August 2, 1963
*137 Marion Wimberly, pro se, 404 Severn Ave., Metairie, La., Marvin Scott, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax for negligence for the indicated years as follows: Addition to Tax
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1955
$109.93
$5.50
1956
132.28
6.61
The issues for determination are the correctness of the respondent's action in determining (1) the amount of income received by petitioner Marion Wimberly as tips during 1955 and 1956, and (2) in determining that the petitioners were liable for an addition to tax under section 6653(a) of the Internal Revenue Code of 1954 for each of the taxable years. Findings of Fact Some of the facts have been stipulated and are found accordingly. During the years in issue the petitioners resided in Metairie, Louisiana. They filed their joint Federal income tax returns for such years with the district director in New Orleans, Louisiana. Since petitioner B. Foster Wimberly is involved herein only because he and Marion *138 Wimberly filed joint income tax returns for the years in issue, the latter sometimes hereinafter will be referred to as the petitioner. On October 4, 1954, the petitioner entered the employment of the Coffee Shop at the Roosevelt Hotel, New Orleans, Louisiana, and continued in such employment until August 15, 1959. From the beginning of her employment in 1954 and throughout the years in issue, she worked as a waitress. For an undisclosed period prior to such employment, the petitioner had worked as a waitress. The Coffee Shop opened for serving at 6:30 a.m. and remained open throughout the day until 10 p.m. Breakfast was served from 6:30 a.m. to 11 a.m., lunch from 11 a.m. to 3 p.m., and dinner from 3 p.m. to 10 p.m. The petitioner's regular hours of duty were from 6 a.m. to 2 p.m. with half an hour off duty for lunch during the period from 10 a.m. to 11 a.m. However, on occasions when business was slow, periods up to 1 1/2 hours were allowed and taken by petitioner and other waitresses for lunch. The basis of the petitioner's employment was a 6-day week, with 1 day off each week, plus a normal vacation of 2 weeks per year. During 1955 and until October 1, 1956, the petitioner *139 received from the Coffee Shop approximately $48 a month salary for her services and approximately $53 a month for the remainder of 1956. In addition, she received tips from customers served by her. For the days the petitioner served breakfast and lunch, she was required by the terms of her employment to contribute 70 cents for the busboys and for the days she served only breakfast, she was required to contribute 35 cents for the busboys. The following is a statement of the number of days during the years in issue that petitioner worked during both breakfast and lunch time, and the number of days that she worked only during breakfast time: Breakfast and
Breakfast
Year
Lunch Time
Time
1955
214
43
1956
236
48
During the years in issue, the Coffee Shop regularly employed five hostesses whose duties were to greet customers at the door, escort them to a table and at the same time attempt to provide the waitresses on duty with an equal number of customers. The policy of the Coffee Shop was to rotate waitresses over the various stations in which the Shop was divided. However, there were a number of regular customers who sat at the same tables each day and *140 who requested and were given the same waitresses regularly. Such waitresses were not rotated. For breakfast the petitioner was rotated over the stations not served regularly by the same waitresses. The petitioner was not rotated for the lunch period and during 1955 and until during the last half of 1956, she was regularly assigned to a station so undesirable that customers generally declined to be seated at it if tables were available elsewhere in the Coffee Shop. For the remainder of 1956, petitioner was assigned to a station where executives sat. During the period in 1956 when petitioner was assigned to the last-mentioned station, the manager of the Coffee Shop used her services for a substantial part of her working time to assist him in the preparation of menus, looking after the uniforms worn by the employees, and in training new waitresses. In recognition of petitioner's satisfactory rendition of such assistance and as compensation therefor and for her loss of tips resulting from the rendition of such assistance, the manager on January 16, 1957, changed the petitioner's employment from that of waitress to that of waitress instructor and waitress, and increased her salary to $150 *141 a month. On a substantial number of the days during 1955 and 1956 when the petitioner was on duty, she worked as a hostess in the place of regular hostesses who were absent. The petitioner is a good waitress and was courteous at all times to customers who seemed to be pleased with her services. For accounting purposes the Coffee Shop broke down its daily sales into three periods - breakfast 6:30 a.m. to 11 a.m., lunch 11 a.m. to 3 p.m., and dinner 3 p.m. to 10 p.m. The customers' individual checks, both cash and charge, showing the amounts of the sales of food and beverage served customers, and if a charge sale, the amount of the tip thereon, and the waitresses who did the serving, were retained by the Coffee Shop for from 2 to 3 years after the close of the year of serving. Thereafter the checks were destroyed. Prior to the trial herein, all customers' checks for the years in issue had been destroyed. As a consequence, the only records as to its sales for 1955 and 1956 and of the portions thereof served by the various waitresses which the Coffee Shop had at the time of the trial were merely the monthly and yearly totals of its sales broken down as to breakfast, lunch, and dinner *142 sales. The following is a statement showing the number of persons served at the Coffee Shop and the amount of its sales for 1955 and 1956: 1955
Breakfast
Lunch
No. of
No. of
Persons
Persons
Month
Served
Amount
Served
Amount
January
14,479
$ 13,676.40
15,188
$ 24,033.35
February
14,850
13,655.00
15,618
25,052.95
March
14,207
13,297.55
16,349
25,896.35
April
13,753
13,162.55
13,961
22,720.65
May
13,051
12,574.70
14,644
23,567.65
June
9,747
9,138.90
12,417
20,235.10
July
8,877
7,991.05
12,021
19,581.30
August
9,382
8,853.85
13,727
22,472.65
September
11,990
11,537.70
13,151
21,205.20
October
15,465
14,146.05
15,337
24,206.35
November
12,718
11,636.05
14,462
22,998.65
December
11,041
10,200.05
14,811
24,263.20
Total
149,560
$139,869.85
171,689
$276,233.40
1956
Breakfast
Lunch
No. of
No. of
Persons
Persons
Month
Served
Amount
Served
Amount
January
14,850
$ 13,655.00
15,618
$ 25,052.95
February
13,680
12,625.10
14,748
23,273.00
March
14,759
13,545.35
15,435
24,897.45
April
13,920
13,588.65
14,081
23,244.60
May
14,568
13,459.95
14,517
23,518.85
June
10,894
10,022.80
12,751
20,377.80
July
9,296
8,770.35
12,412
21,414.45
August
11,142
10,368.50
14,030
23,322.80
September
11,342
11,122.35
12,929
20,368.00
October
13,061
12,982.58
13,885
22,184.30
November
12,938
12,839.20
14,027
22,525.75
December
9,597
9,815.05
14,945
23,659.25
Total
150,047
$142,794.88
169,378
$273,839.20
*143 Annual average sales per
person
served
.935
1.608
.951
1,616
Total sales Lunch and
$416,103.25
Total sales
$416,634.08
Breakfast
Lunch and
Breakfast
Total number of persons
Total number
served
of persons
served
Lunch and Breakfast
321,249
Lunch and
319,412
Breakfast
Aside from customers' checks, which no longer are available for 1955 and 1956, the Coffee Shop maintained no records showing the waitresses or the numbers thereof who were on duty and engaged in serving breakfast, lunch, or dinner. The petitioner maintained no record of the amounts of food and beverages served by her during 1955 and 1956, no record of the amounts of tips she received during those years, and no record of the amounts she contributed for the busboys during such years. In her income tax return for 1955, the petitioner reported $535.57 as salary received by her for her services as a waitress and $756 as income received as tips. In her return for 1956, she reported $619.55 as salary received and $782 as income received as tips. The amounts reported for each of the years as income received as tips represented estimates made by petitioner. *144 In determining the deficiencies in issue, the respondent determined that petitioner's income received as tips was $1,284.50 for 1955 and that her income from that source was $1,418 for 1956. In determining the foregoing amounts of income received as tips, the respondent examined for the dates of October 20 and November 20, 1956, the Coffee Shop's customers' checks for charge sales. These showed the amount of the tips on such sales. From his examination of the checks for those 2 days the respondent concluded that the average tip on charge sales amounted to 18 1/2 percent of the charge sales for those days. Being of the opinion that the average tip on cash sales possibly was less than 18 1/2 percent, the respondent reduced such percentage to 13 percent which he determined was applicable to the total amount of cash and charge sales served by petitioner in 1955 and 1956, respectively, for the purpose of determining her income received as tips for those years. Thereupon the respondent, relying on estimates as to the average number of waitresses who served during the breakfast period and the average number who served during the lunch period, and using the total gross sales of the Coffee *145 Shop for the respective periods, computed average sales per waitress per period. Using such average sales per waitress per period, the respondent computed certain amounts, not shown in the record, as representing the total cash and charge sales of food and beverages served by petitioner in the respective years. The respondent then multiplied by 13 percent the amounts so computed and thus arrived at the amounts determined by him as the income received by petitioner as tips during 1955 and 1956. In computing the amounts of the sales of food and beverages served by petitioner in 1955 and 1956, the respondent made no allowance for the fact that during 1955 and until during the last half of 1956, the petitioner at lunch time served an undesirable station, and that for the remainder of 1956, a substantial portion of petitioner's working time was spent in assisting the manager of the Coffee Shop with matters other than serving food and beverages. Further, in computing the petitioner's income from tips for 1955 and 1956, the respondent made no allowance for the amounts the petitioner was required to contribute for the busboys on the days that she worked. The total amount of the cash and *146 charge sales served by petitioner was $9,480 in 1955 and $10,300 in 1956. The petitioner received tips in the amount of $1,042.80 during 1955 and $1,133 during 1956. The petitioner contributed for the busboys $156 in 1955 and $173 in 1956. The petitioner received taxable income as tips in the amount of $880.60 in 1955 and $960 in 1956. Opinion The respondent has determined that petitioner's income received as tips was $1,284.50 for 1955 and $1,418 for 1956. The respondent has not favored us with his computation of those amounts. However, the record shows that the foregoing amounts represent 13 percent of some amounts, not shown in the record, which respondent determined represented the total cash and charge sales of food and beverages served by petitioner, during the respective years. Since $1,284.50 is 13 percent of $9,880.77 and $1,418 is 13 percent of $10,907.70, we conclude that respondent determined that sales served by petitioner amounted to $9,880.77 for 1955 and $10,907.70 for 1956. As we understand the testimony of a witness for the respondent, the foregoing amounts represent average sales per waitress per breakfast period and per lunch period computed on the basis of *147 an estimated number of waitresses who served during the respective periods. Amounts arrived at in the foregoing manner were at best averages predicated on estimates and presupposed that each waitress had an average station and that the time she worked was spent in serving food and beverages. The record discloses that during 1955 and until during the last half of 1956 the petitioner was regularly assigned for the lunch period to a station so undesirable that customers generally declined to be seated at it if tables were available elsewhere in the Coffee Shop. During the remainder of 1956, a substantial portion of petitioner's working time was spent in assisting the manager of the Coffee Shop in the preparation of menus, looking after uniforms worn by the employees and in training new waitresses. On a substantial number of the days during 1955 and 1956 when the petitioner was on duty, she worked as a hostess in the place of regular hostesses who were absent. In view of the foregoing, and in the absence of anything to indicate otherwise, we are unable to conclude that sales served by petitioner for the years in issue were as large as the average sales employed herein by respondent. Applying *148 the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we have concluded and found as a fact that the sales served by petitioner were $9,480 for 1955 and $10,300 for 1956. The respondent, relying on the data shown on customers' checks for charge sales by the Coffee Shop on October 20 and November 20, 1956, concluded that the average tip on charge sales was 18 1/2 percent of such sales. Being of the opinion that the average tip on cash sales possibly was less than 18 1/2 percent, the respondent reduced that percentage to 13 percent which he determined was applicable to the total amount of cash and charge sales served by petitioner during 1955 and 1956, for the purpose of determining the petitioner's tips from such sales. At the trial herein, the respondent placed in evidence four exhibits relating to charge sales of the Coffee Shop on the following dates and showing that the tips charge on charge sales on such dates constituted the following percentages of charge sales: Date
Percentage
January 12, 1959
17.88
April 14, 1959
15.80
July 1, 1959
16.80
October 8, 1959
15.70
Total
66.18
Average
16.54
At the trial the respondent submitted *149 the testimony of a witness who was familiar with the charge sales of the Coffee Shop in 1956 and the tips shown on the checks for such sales, and who testified that the percentage of tipping shown on charge sales on the above four dates in 1959 was approximately the same as in 1956. Accepting the above average of 16.54 percent for the four dates in 1959 as more correctly reflecting the approximate average percentage of tips on charge sales in 1956 than the 18 1/2 percent in 1956 for the 2 days used by respondent in determining the deficiencies involved herein and reducing such percentage by 5 1/2 as was done by respondent to reflect the possibility that tips on cash sales were lower, gives approximately 11 percent. Applying the 11 percent to the total cash and charge sales served by petitioner during 1955 and 1956 as herein determined for those years, $9,480 and $10,300, respectively, gives $1,042.80 and $1,133 as the amount of tips received by petitioner in the respective years. By the terms of her employment, the petitioner was required to contribute 70 cents for the busboys for each day she served breakfast and lunch, and 35 cents for each day she served only breakfast. The *150 parties have stipulated that petitioner worked during both breakfast and lunch time for 214 days in 1955 and 236 days in 1956, and worked during breakfast time only for 43 days in 1955 and 48 days in 1956. Although we are satisfied from the record that for a substantial number of days during those years on which the petitioner was on duty she worked as a hostess, the record does not disclose the number or approximate number of such days. Presumably she contributed nothing for the busboys on those days she worked as hostess. Applying the rule of Cohan v. Commissioner, supra, we have determined and found as a fact that petitioner contributed $156 for the busboys in 1955 and $173 in 1956. Subtracting from the amounts of $1,042.80 and $1,133, received as tips in 1955 and 1956, respectively, the amounts of $156 and $173 contributed by petitioner for the busboys in 1955 and 1956, respectively, leaves $880.60 and $960 as the taxable income received by petitioner as tips in the respective years. As was said in Dorothy L. Sutherland, 32 T.C. 862 (1959), taxpayers who receive income as tips but do not keep written records of the tips are "extremely negligent" in *151 failing to keep such records. Since the petitioner did not keep any record of the tips she received during the years in issue and since she received income from tips substantially in excess of the amounts she reported in her returns for those years, we sustain the respondent's determination of additions to tax provided in section 6653(a) of the Code of 1954. Decision will be entered under Rule 50.